PER CURIAM.
Appellant, respondent below, appeals a final judgment of adoption entered by the chancellor declaring her minor child to be the legal child of appellees, petitioners below.
Appellees filed a petition for adoption in the circuit court seeking to adopt John Watson, Jr., a minor child. Appellee John Watson, Sr., is the natural father of the child, and appellee Jean Mary Watson, at all times relevant to this appeal, was his legal wife. Subsequently, the matter was referred to a general master who, after discovery and several hearings, made his report to the chancellor. This report states, in pertinent part, as follows:
“THIS CAUSE having come on to be heard before me as General Master upon the Petition for Adoption and other pending matters, and the Master being advised in the premises reports:
“1. That said cause came on for numerous hearings; that at all hearings herein, the parties were present and were represented by counsel; that the testimony of numerous witnesses was taken; and that many documents were received in evidence.
“2. That from the testimony and evidence submitted, the Master finds it is in the best interests and welfare of JOHN WATSON, JR. that the adoption be granted.
“3. That from the testimony and evidence submitted, the Master finds that the natural mother, RUTH WATSON has abandoned JOHN WATSON, JR. With reference to the abandonment, it is evidenced by the voluntary conduct of RUTH WATSON during the period of time in which she engaged in her illegal activities that culminated in her being imprisoned for a period of nine months. This is a voluntary action on the part of RUTH WATSON which would necessarily have to be considered as abandonment or a lack of sufficient concern for her obligation as a parent.
“4. We are not here dealing with a case of a stranger to the blood applying for the adoption of a child. We have a contest between the two natural parents of the child. The child is remaining in a home with his half-brothers and half-sisters. RUTH WATSON’s children are his half-brothers and half-sisters as are JOHN WATSON, SR.’s children his half-brothers and half-sisters. The relationship is simply that one side is his natural mother and the other side is his natural father.
“5. The evidence further indicates that JOHN WATSON, JR. has been in close and constant contact with his fa *850 ther over the entire period of his life except for a very short period. The last 2\/} years, as indicated by the evidence submitted and the Report of the Representative of the State of Florida, Division of Family Services, have been with his father. In order to remove him, it would be necessary to show that the environment is deleterious to him. The reports and all the evidence submitted indicate that it is not deleterious.
“6. The evidence does not establish that RUTH WATSON has rehabilitated herself since her release from prison. It is established that she has made good strides in that direction. However, the Master does not recommend playing sociological roulette with JOHN WATSON, JR’s life. We cannot accept the possibility for an established fact and this is just what we are dealing with, an established fact about a home environment that is found to be stable;” to promote his proper psychological, emotional, and physical growth. The evidence indicates that the home of JOHN WATSON and JEAN MARY WATSON is a stable environment for the child and can promote JOHN WATSON, JR.’s proper psychological, emotional and physical growth. On the other side of the fence, we would be dealing with a type of sociological roulette that if RUTH WATSON did have a regression again to her former behavior, which behavior caused her to be incarcerated on three different occasions, as did occur in the past, then we would have JOHN WATSON, JR. at a later age thrown into a similar situation all over again. The evidence does not justify this situation, nor does it indicate that it would be in the best interests for the child. In fact, the evidence presented indicates that it would be contrary to the best interests of the child.
“7. The Master recommends further not only that the adoption be granted, but that the adoptive parents, JOHN WATSON, SR. and JEAN MARY WATSON will have complete control as to the child’s association. . . . ”
Thereafter, on March 25, 1975, the chancellor entered a final judgment of adoption declaring John Watson, Jr., to be the legal child of appellees. From this final judgment, appellant appeals.
Appellant contends the trial court erred by finding that she had abandoned her child and in granting appellee’s adoption petition. Appellant argues, basically, that there was insufficient evidence to support the finding of abandonment; and, absent such evidence, the only other ground for permitting the adoption, without her consent, was that she was unfit as a parent, which was not established by the evidence.
After a careful review of the record, we hold that there is sufficient competent evidence to support the finding of the chancellor that appellant had abandoned her child. Because this finding has not beeri shown to be clearly erroneous, it will not be set aside on appeal. See Smith v. Lyst, Fla.App.1968, 212 So.2d 921; Moore v. Keen, Fla.App.1965, 181 So.2d 29, and 2 Fla.Jur., Appeals §§ 343 and 349. Due to this determination, it is unnecessary for us to reach appellant’s second point on appeal.
We have reviewed the record, all points in the briefs, and arguments of counsel in the light of the prevailing principles of law, and have concluded that no reversible error has been shown. Therefore, for the reasons stated and upon the authorities cited, the final judgment of adoption appealed is affirmed.
Affirmed.