352 So.2d 957 (1977)
Roosevelt TURNER et al., Appellants,
v.
ADOPTION OF Kashi Madora Huggins TURNER, Appellee.
No. FF-238.
District Court of Appeal of Florida, First District.
December 14, 1977.
*958 J. David Holder of Barrett, Boyd & Holder, Tallahassee, for appellants.
Robert F. Williams and Joyce Davis, Tallahassee, for appellee.
McCORD, Chief Judge.
This appeal is from a final order denying the petition of appellants, Roosevelt and Louisa Turner, for adoption of their minor granddaughter, Kashi Madora Huggins. Kashi was born in May, 1973, to appellants' deceased daughter Jerry Dean Turner Huggins and appellee John Huggins. During a period when appellee and his wife, Jerry, were estranged, she and one Theodore Rollins were murdered by appellee. At the time of the murder, appellee was on probation after having been charged with assault to commit murder in the first degree upon his wife and having pled nolo contendere to the lesser offense of breaking and entering with intent to commit a misdemeanor. Following the murder of his wife and Rollins, appellee was charged with first degree murder of each of them. He subsequently pled guilty to second degree murder of each of them, and on April 14, 1975, he was adjudged guilty and sentenced to two consecutive sentences of life imprisonment.
Since her birth, Kashi has lived in the home of appellants. On September 2, 1975, over appellee's protest, letters of guardianship were issued by the court to appellant Roosevelt Turner to act as guardian of the person and property of the minor child. Subsequently, on June 21, 1976, appellants petitioned for adoption of the child. Appellee was transported from the state prison to the hearing on the petition. He did not consent to the adoption and opposed it. In its final order, the trial court found from the evidence that there had not been a legal abandonment as required by § 63.062 and § 63.072, Florida Statutes; that termination of parental rights by adoption may only be done over the objection of a natural parent when there is a showing by clear and convincing evidence of complete abandonment. Citing this Court's opinion in Harden v. Thomas, 329 So.2d 389 (Fla. 1 DCA 1976), the trial court further found that imprisonment of a natural parent for a lifetime sentence does not constitute abandonment, as a matter of law, of a natural child.
Subsequently, after hearing appellant's motion for rehearing, the trial court denied same finding: "that the petitioners' motion for rehearing be and the same is hereby reluctantly denied." It is significant that the trial judge made the following statements on the record at the hearing on petition for rehearing upon being presented with a report of investigation of the Department of Health and Rehabilitative Services:
"Well, I suspect that you have concluded that the Turner home is a fine home to raise a youngster. And I have no doubt in my mind but that that's true. If there was any way that I could ignore the law, I would do so.
Let me for the benefit of Mr. and Mrs. Turner say that this has been one of the hardest decisions that I have had to make since I have sat in this position. I concluded that the law that should govern my decision in this matter was whether or not that there was a case of parental abandonment, abandonment by the father. And the cases seem to tell us that the fact of incarceration alone does not *959 constitute abandonment. That was a hard decision and if there was any way I could have conscientiously ruled otherwise, I would have done so.
* * * * * *
Mr. Holder, I will let you say whatever it is you want to tell me ... if you can tell me that abandonment and can show me some cases that abandonment is not the issue  in other words, if I was going to consider what was in the best interest of that child, I would give her to Mr. and Mrs. Turner immediately. My inclination all along was to give Mr. and Mrs. Turner this youngster.
* * * * * *
If there were any way that I could conscientiously say that there has been abandonment, I would. But, I just don't feel  I didn't feel  that my conscience would permit me to do that. That was a hard decision for me to make because I know that this young lady's report says that you have got a fine household. And I have never doubted that. I guess I was trying to buy some time to make my decision when I asked for this report or perhaps at that time I thought that that was the most important factor to consider. And as far as I am concerned, it is what is in the best interest of the child. But the law says there has got to be abandonment. And incarceration or being in jail alone does not constitute abandonment.
I know how he got into jail. And if there were a way that I could conscientiously give you the adoption of this child, I would do it in a minute.
* * * * * *
If there was a way that I could do it, I would do it right now. I would reverse myself right now if I were not convinced that the law says that abandonment is what I have got to look at and not what's in the best interest of the child.
Because I would find for the record right this minute that this child will be much better served in the home of Mr. and Mrs. Turner, that that is unquestionably what is in the best interest of the child.
* * * * * *
And if it were within my power to ignore the law, you would be the adopted parents of the youngster, too. But, I just don't think that I can. I hope you will understand. I know this has been a very trying experience for the both of you. But, I hope you will understand the position that I have found myself in, wanting to do one thing but not being able to do it under the law."
It is undisputed in the record that the child has lived in the appellants' home since she was born; and since his imprisonment, appellee has never sent her a card, written her a letter, sent her a gift, called her on the telephone, made requests to see the child, or made requests to have the child brought to prison to see him. He testified that he has not communicated with the child because of appellants' bitterness toward him; that he has inquired of friends about the child. We have no disagreement with the trial court's finding that the record must show abandonment by a parent who does not consent to the adoption. See Durden v. Henry, 343 So.2d 1361 (Fla. 1 DCA 1977); In re: Adoption of Lewis, 340 So.2d 126 (Fla. 1 DCA 1976). We disagree, however, with the trial court's finding that abandonment by the child's father has not been shown by this record. Regardless of the father's stated reason for not attempting to communicate with the child, the fact remains, and it is undisputed, that he has not attempted to communicate with the child in any way. In Harden v. Thomas, 329 So.2d 389 (Fla. 1 DCA 1976)  the case relied upon by the trial judge in denying this petition for adoption  we stated:
"We hold that the imprisonment of a natural parent under a lifetime sentence does not, as a matter of law, constitute abandonment of his natural child."
In that case the natural father objected to the adoption of his child by his former wife's then husband. The father was serving a life sentence for crimes unrelated to the child's mother. There, in the divorce proceeding, the court stated in its final judgment,
"In view of the fact that the Husband is presently incarcerated in the Florida *960 State Prison, the Court shall determine the time and length of visitation upon petition by either party upon the Husband's release from the Florida State Prison."
We further pointed out that the evidence reflected continuous efforts on the part of the father to maintain a father's interest in his child. He had previously petitioned the domestic relations court seeking means by which his child could visit him at Raiford, and the petition was pending at the time the adoption proceeding was instituted. Here, appellant made no efforts to contact the child.
This Court, in In re Adoption by Cooper, 242 So.2d 196 (Fla. 1 DCA 1970), affirmed a final judgment of adoption by which a minor child was declared to be the legal child of her maternal grandparents over the protest of the child's father who had shot and killed the child's mother and thereafter pled guilty to the offense of manslaughter and was sentenced to a term of imprisonment from six months to 20 years in the state penitentiary. This Court there affirmed on the ground that the adoption was manifestly for the best interest of the child. [At that time, however, § 63.072, Florida Statutes (1975), (Chapter 73-159, Laws of Florida) had not been enacted. It lists the circumstances under which the court may excuse the consent of a parent, and the child's best interest is not one of them, but abandonment of the child by the parent is included. The trial court's reliance upon our decision in Harden to deny the petition for adoption was misplaced. Our holding there was that the imprisonment of a natural parent under a lifetime sentence does not, as a matter of law, constitute abandonment of his child. It is apparent from the trial court's statements on the record that, were it not for his conclusion that such ruling in Harden prohibited his doing so, he would have approved the adoption. In the case sub judice, however, we not only have the factor that the father is serving two life sentences, but we also have the added circumstance that such is the result of his having murdered the child's mother and thereby demonstrated his unfitness to have any further parental relationship with this child. In addition, we have the further circumstance that he has made no effort whatsoever to establish even a minimal parental relationship with the child. Such constitutes abandonment of his child, and his consent to the adoption is thereby waived pursuant to § 63.072, Florida Statutes (1975).
Reversed and remanded with directions to grant appellants' petition for adoption.
BOYER and MELVIN, JJ., concur.