388 So.2d 302 (1980)
In re the MATTER OF ADOPTION of John Steven COTTRILL.
Nancy COLLINS, Appellant,
v.
Mary Elsie COTTRILL, Appellee.
No. 79-2258.
District Court of Appeal of Florida, Third District.
September 16, 1980.
Leonard Frishman, Coral Gables, and Bruce M. Boiko, Miami, for appellant.
Howard L. Kuker, Miami, for appellee.
*303 Before SCHWARTZ, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
We hold that the trial court's finding that Nancy Collins abandoned her child[1] is not supported by clear and convincing evidence, see, e.g., Solomon v. McLucas, 382 So.2d 339 (Fla.2d DCA 1980), and accordingly, reverse the trial court's order granting Mary Cottrill's petition for adoption.
A decree of adoption results in permanent deprivation of parental rights.[2] Because of the finality which attaches to adoption, the legislature has seen fit to authorize it only upon the giving of appropriate consents, Section 63.062, Florida Statutes (1977), or under circumstances where it can be said that the conduct or condition of the parent obviates the necessity of consent, Section 63.072, Florida Statutes (1977). One of the bases, and the only one pertinent here, upon which a court may consider that consent to adoption has been waived is when the parent has abandoned the child. § 63.072(1), Fla. Stat. (1977).
At the outset we make clear that the custody of the child, which from this record quite clearly was properly awarded to Mary Cottrill, is unaffected by our decision. Presumably, custody will remain unchanged until Nancy Collins can demonstrate her fitness to properly care for her child and that it will be in the child's best interests to return him to her custody. We also make clear that this is not a proceeding for the permanent commitment of the child under Chapter 39, Florida Statutes (1977), which, as this court has recently held, contains a less stringent test for abandonment and has objectives far different than an adoption proceeding under Chapter 63, Florida Statutes (1977). See In Interest of J.F. (Fla.3d DCA 1980) (Case No. 79-1223, opinion filed June 3, 1980).
When Johnny Collins, the child, was ten years old, his mother, plagued by a chronic drinking problem, became ill, bedridden and unable to properly care for him. It was at this point that Mary Cottrill, a nurse who was needed in the Collins home, first took an interest in Johnny. Mrs. Collins was hospitalized and voluntarily placed Johnny at a youth ranch. Later that year, 1977, Johnny, with Mrs. Collins' consent, was adjudicated dependent. He was placed in the custody of Mary Cottrill.
Ms. Cottrill does not contest the fact that Mrs. Collins continued to evince interest in her child. Mrs. Collins repeatedly and unsuccessfully sought to regain custody of Johnny through proceedings in the juvenile court and attended several hearings for that purpose. She called Johnny on the phone until Ms. Cottrill acquired a new and unlisted number, which she admittedly did not disclose to Mrs. Collins. Johnny's mother sent him letters, toys and clothing, and birthday and Christmas cards and gifts. On a number of occasions she had dinner with Johnny at her house. For several months Mrs. Collins and Johnny attended counselling sessions with a psychologist. By Ms. Cottrill's admission, at no time did Mrs. Collins give any indication that she wanted to relinquish permanent custody of Johnny or have him adopted by another.
These facts notwithstanding, Ms. Cottrill says that the order of adoption is warranted for the reasons that Mrs. Collins was not the victim of an unfortunate illness, but rather brought it upon herself with a chronic drinking problem, which even in 1979 was *304 not totally cured; that Mrs. Collins' estranged husband, who, all admit, did nothing to care for Johnny, stated it would be in the child's best interests to be adopted by Ms. Cottrill[3]; that Johnny expressed his love for and desire to remain with and be adopted by Ms. Cottrill; that as a result of being with Ms. Cottrill, Johnny had changed from withdrawn and fearful to being friendly and secure; that it was suggested that some of the negative experiences of the past were so strong that visitation with Mrs. Collins should only be done with the consent of the child's therapist; that Mrs. Collins had previously consented to an adjudication of dependency; that Mrs. Collins' home environment was not suitable as a residence for Johnny, and she was poorly equipped, emotionally and physically, to provide for Johnny; and, finally, that the Florida Department of Health and Rehabilitative Services recommended that it would be in the best interests of Johnny to be adopted by Ms. Cottrill.
It is clear that the trial court was perfectly justified in finding that Johnny was thriving with Ms. Cottrill and that it was in his best interests to remain in her custody. The best interests of the child are not, however, a factor which will obviate the necessity of consent to adoption, Solomon v. McLucas, supra, and by the same reasoning not a factor that will obviate the necessity of proof of abandonment where consent is not forthcoming.[4] As Judge Danahy stated in his opinion in Solomon v. McLucas, supra, at 343:
"We are aware of the concerns expressed by Judge Mills in his specially concurring opinion in Nelson v. Herndon, [371 So.2d 140 (Fla. 1st DCA 1979)], and recognize that, on the face of the matter, it would appear that the legislature was remiss in not considering the best interests of the child as the sole determinative basis for an adoption. But it must be remembered that Chapter 63 relates only to adoption, not custody. Permitting the adoption of a child terminates the rights of a natural parent, and should not be ordered without parental consent where that consent is otherwise required except upon a showing that the natural parent has engaged in conduct which justifies the termination of that parent's rights with respect to the child. The legislature has specified in Section 63.072(1) that such conduct must amount to a desertion without affording means of identification or an abandonment. We point out, however, that the denial of a petition for adoption on the ground that abandonment has not been shown does not determine the matter of custody. Custody traditionally has been taken from natural parents and placed in others whenever the parents' neglect or abuse makes that action necessary for the best interests of the child. Section 39.01(9) and Sections 39.40, et seq., Florida Statutes (Supp. 1978). But grounds which may legally justify depriving a natural parent of custody do not necessarily constitute grounds for severing the parental relationship permanently by allowing adoption of the child by others. Wiggins v. Rolls, 100 So.2d 414 (Fla. 1958)."
The expressed preference by a child to be adopted by another similarly does not dispense with the need for the parent's consent or its functional equivalent, proof of abandonment.[5] The recommendation of the Department of Health and Rehabilitative Services, and, a fortiori, the recommendation of an uninterested father, does not justify an order of adoption. Solomon v. McLucas, supra; Matter of Adoption of Noble, *305 349 So.2d 1215 (Fla. 4th DCA 1977). Neither the prior dependency adjudication nor Mrs. Collins' derelictions serve as a basis for this permanent step. In re Adoption of Lewis, 340 So.2d 126 (Fla. 1st DCA 1976). In a word, nothing but evidence of abandonment by the parent will suffice, and such evidence is completely lacking here. Indeed, the evidence of Mrs. Collins' continued interest in and affection for the child is undisputed. On much stronger showings of a parent's disinterest in the child, courts have refused to find abandonment. See, e.g., Durden v. Henry, 343 So.2d 1361 (Fla. 1st DCA 1977); In re Adoption of Gossett, 277 So.2d 832 (Fla. 1st DCA 1973).
Cottrill relies on three cases, Watson v. Watson, 330 So.2d 848 (Fla.3d DCA 1976); In re Adoption of Layton, 196 So.2d 784 (Fla.3d DCA 1967); and In re Adoption of Corcuera, 145 So.2d 493 (Fla. 1st DCA 1962), to support her position that the evidence of abandonment was sufficient to justify the trial court's ruling. Layton and Corcuera both involved extreme infrequency of contact over a prolonged period of years from which abandonment was inferred, and are thus inapposite. In Watson, the recitation of facts is sparse. To the extent that these cases suggest that the best interests of the child are paramount in adoption proceedings and where demonstrated may justify an adoption award without regard to abandonment, we specifically recede from Watson and Layton and decline to follow Corcuera.[6] We also recede from the statement in Watson that the mother's engagement in illegal activities which culminated in a nine-month prison term, being a voluntary act on her part, would "necessarily have to be considered as abandonment or a lack of sufficient concern for her obligation as a parent." Incarceration, or in the present case, illness brought on by a drinking problem, does not, ipso facto, constitute abandonment even though the acts leading to the incarceration may be voluntary. See Harden v. Thomas, 329 So.2d 389 (Fla. 1st DCA 1976) (holding that the imprisonment of a parent under a lifetime sentence does not, as a matter of law, constitute abandonment of his child). Accord, Turner v. Adoption of Turner, 352 So.2d 957 (Fla. 1st DCA 1977). A collateral consequence of a sentence of imprisonment or the illness of alcoholism is simply not the permanent forfeiture of one's child.
Reversed.
NOTES
[1] Nancy Collins adopted the child in 1967. That act in effect made her the natural parent of the child, Section 63.172(1)(c), Florida Statutes (1977), and a further adoption required her consent or, in this case, proof that she abandoned the child. Cf. Vreeland v. Vreeland, 296 S.W.2d 55 (Mo. 1956); In re Macrae, 189 N.Y. 142, 81 N.E. 956 (1907).
[2] Section 63.172(1), Florida Statutes (1977), sets forth the legal effects of a judgment of adoption. The impact is most dramatically expressed in Section 63.127(1)(b), Florida Statutes (1977), which states that a judgment of adoption "terminates all legal relationships between the adopted person and his relatives, including his natural parents, ... so that the adopted person thereafter is a stranger to his former relatives for all purposes, ..." (emphasis supplied).
[3] Mr. Collins did not, however, execute a formal consent.
[4] In light of the Second District's decision in Solomon v. McLucas, Cottrill can no longer take comfort in Jones v. Allen, 277 So.2d 599 (Fla.2d DCA 1973), in which the court said that a showing of abandonment was not required where there is clear and convincing evidence that adoption would be in the best interests of the child. See also Matter of Adoption of Noble, 349 So.2d 1215 (Fla. 4th DCA 1977), expressly declining to follow Jones v. Allen.
[5] A minor over the age of twelve must consent to his or her adoption unless the court finds that the best interest of the child makes the child's consent unnecessary, § 63.062, Fla. Stat. (1977). This, however, is in addition to, not in replacement of, the parents' consent.
[6] Layton and Corcuera were, of course, decided prior to enactment of Chapter 73-159, Laws of Florida. Before then, the required showing for adoption was that the adoptive parents were fit and proper, that the best interests of the child would be promoted, and that the child was suitable for adoption. See In re Adoption by Cooper, 242 So.2d 196 (Fla. 1st DCA 1970). Before 1973, abandonment and the inability to locate a parent would excuse a lack of notice, but were not a required showing for adoption. See Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208 (1943).