SHIVERS, Judge.
Appellant Shirley Ann Smith, the natural mother, appeals final judgment of adoption, *37 contending the trial court erred in terminating her parental rights. We find clear and convincing evidence to support the trial court’s finding that the natural mother abandoned the minor child, now Angie Marie Moore, that the adoption is in the best interests of the child, and that the appel-lees Walter Lee Moore and Mara Doris Moore are fit and proper persons to adopt this child.
Angie Marie was originally placed in the home of the Moores on July 21,1975 by the Department of Health and Rehabilitative Services (HRS) when she was 4½ months of age; was returned to her natural parents three months later on October 23, 1975; was returned to the Moores two months after that on December 15, 1975; was returned to her natural parents on January 29, 1976, a month and a half later; and on March 15, 1976, a month and a half after that, was once again returned to the Moores where she lived continuously in foster care until her adoption by the Moores in September 1983.
In 1980 the Legislature enacted section 409.168, Florida Statutes, requiring a performance agreement to be executed, within 30 days after placement of a child in a foster home. The Legislature stated as its intent that every child in foster care be permanently placed with either its biological family or its adoptive family and that no child remain in foster care longer than one year.
Section 409.168(1) (1980) provided:
The Legislature finds that 7 out of 10 children placed in foster care do not return to their biological families after the first year and that permanent homes could be found for many of these children if their status were reviewed periodically and they were found eligible for adoption. It is the intent of the Legislature that permanent placements with their biological or adoptive families be achieved as soon as possible for every child in foster care and that no child remain in foster care longer than 1 year. It is the intent of the Legislature, therefore, to help ensure a permanent home for children in foster care by requiring a performance agreement and a periodic review and report to the court on their status.
“Performance agreement” was defined in s. 409.168(2)(g) (1980):
“Performance agreement” means a document written in layman’s terms in the principal language, to the extent possible, of the natural parent and in English which is ordered by the court, prepared by the social service agency responsible for the foster home placement in conference with the natural parents, and signed by the parent, parents, or other custodian of the child; the child’s legal guardian; the social service agency responsible for the foster home placement; and, if possible, the child.
The purpose of the performance agreement was stated in s. 409.168(3)(a)l.:
(3)(a) In each case in which the custody of a child has been vested either voluntarily or involuntarily in the social service agency and the child has been placed in foster care, a performance agreement shall be prepared within 30 days after the placement and shall be submitted to the court.
1. The purpose of a performance agreement shall be to record the actions to be taken by the parties involved in order to quickly assure the safe return of the child to his parents or, if such return is untenable, the permanent commitment of the child to the department or licensed child-placing agency for the purpose of finding a permanent adoptive home.
Section 409.168(3)(a)5. provided that “By October 1, 1981, a performance agreement shall be prepared for each child who was residing in foster care on October 1, 1980, and who has not been returned to the home of his parent or parents or placed for adoption.”
Our court, In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983) and the supreme court in the recent case of Burk v. Department of Health and Rehabilitative Services, 476 So.2d 1275 (Fla.1985), held that the natural parent or parents must be *38 offered a performance agreement before a child is permanently committed to the child-placing agency for adoption.
Here, we conclude that, under the present law, offer of a performance agreement to the natural parent is a prerequisite to a licensed child-placing agency or HRS obtaining an order permanently committing the child for adoption. When there has been a performance agreement and an order of permanent commitment to HRS, the consent of the agency alone is sufficient for adoption, s. 63.062(3) Florida Statutes (1983). Under s. 39.41 of the Florida Statutes, the permanent order of commitment permanently deprives the natural parents of their rights to the child.
We find nothing, though, in Chapter 63 (“Adoption”), requiring, as a condition of adoption, an order of permanent commitment to HRS which placed the child in foster care with the proposed adopting parents when the adopting parents initiate a private adoption. This can be addressed by the Legislature if it, in its wisdom, considers this to be a hiatus.
In 1980 when the Legislature enacted the performance agreement requirement for those in foster care, Angie Marie had been in the Moores’ home for over four years. We also note that the natural parents were represented by counsel in the adoption proceedings in the trial court.
The final judgment of adoption is AFFIRMED.
WENTWORTH and WIGGINTON, JJ., concur.