McDONALD, Justice,
dissenting.
Today the Court deprives a now married couple of their natural child because the mother gave an economically duressed consent for adoption and the father, prior to the birth of the child and prior to their marriage, failed to fully support the mother. This is done without a finding that the natural parents are unfit in the slightest. I think it a sad day.
The opinion of the Fifth District Court of Appeal in this case should be approved because its legal analysis is correct. As stated therein:
The key issues in this case ... are whether abandonment or desertion may be used as the sole basis to excuse the necessity for consent to an adoption under Chapter 63; and whether a putative natural father can abandon his child by neglecting his responsibilities to support the natural mother during pregnancy and assist with her pre-birth medical expenses.
In re Adoption of Doe, 524 So.2d 1037, 1043 (Fla. 5th DCA 1988). After a thorough discussion of relevant case law, the district court concluded that pre-birth acts of abandonment do not excuse consent. Id. at 1044. The district court majority is correct. I further add that, even if pre-birth conduct can be equated to abandonment, the conduct of the father in this case falls far short of abandonment.[1]
What the father did, or failed to do, is less than he should have. Even so, his acts fall far short of demonstrating an intent to abandon the mother and the unborn child. He did not repudiate or renounce them; he did not permanently forsake them for others or self; he did not demonstrate a continuing disinterest in their fate.
Florida has heretofore properly taken a narrow view as to what constitutes abandonment. Abandonment must be proven by clear and convincing evidence and must be complete.[2] I am aware of but two appellate decisions, both bottomed on facts much more egregious over a substantial time after birth than exist here, where abandonment was established.[3] There are a legion of Florida cases where the courts have found that abandonment was not established.[4]
No justification exists in this case for the trial judge to excuse consent. Section 63.- *751 062, Florida Statutes (1985), requires that written consent be executed after the birth of a child. If abandonment is to take the place of or excuse consent, does it not follow that such action also take place after birth? It should.
This Court, by its decision, is wrongfully disturbing one of the most fundamental rights of human relations when it deprives the natural parents of the rights, privileges, and responsibilities of rearing their child. Such rights can be forfeited only upon a showing of unfitness or rejection by the parents. While I have grave doubts concerning the issue of whether the mother’s consent was valid because of the turmoil in her life and the economic pressures exerted upon her, it is clear that adoption requires the consent of both parents. Here, the father never consented and sought to obtain the child immediately upon his birth. The adoptive parents are interlopers, albeit benign, in this case. The issue of the best interest of this child arises only when the child is legally free for adoption. § 63.022(2), Fla.Stat. (1985). Were that issue to be reached, history has demonstrated that, unless unfit, the best interest of the child lies with the natural parents. It is but a matter of time before this child will learn of his adoption and wonder why. All that can be said to him is that, even though your mother wanted you, the adoptive parents and the courts would not let her have you because in moments of despair she let you go; even though your father wanted you, the adoptive parents and the courts would not let him join your mother in having you because he did not treat your mother as well as he might have when she was pregnant with you. Even to a child these explanations are inadequate.
I would approve the decision of the district court of appeal and direct an immediate delivery of the child to the natural parents.

.I will call the natural father Richard and the natural mother Mary. Even though Richard had lost his job at the end of 1985 and did not find another until May 1986, during which time he borrowed money from his father, it is unchallenged that Richard nonetheless:
(1) spent $4000 on Mary for a ski vacation, including new clothes for her;
(2) had a continuing relationship with Mary throughout the pregnancy, which included a ride to "dream” about their future the week before she left, following an evening out for her birthday;
(3) cared deeply for Mary’s older son, buying him toys, taking him on outings with and without Mary, paying his insurance premiums;
(4) gave Mary a maternity gown and robe for Mother's Day in May 1986, and money for a new outfit for her birthday just days before she left;
(5) continually took Mary and her son out to eat, or to his apartment where he cooked for them, or to his parents home;
(6) provided his own furniture to furnish Mary's apartment, in addition to the furniture his parents provided at his request;
(7) paid Mary's rent in February, the only time she told him she needed financial help;
(8) never failed to pick up milk, baby food, diapers, and such when Mary asked;
(9) urged Mary to come back to Phoenix to have the child, live with him, and give him time to sort his life out;
(10) opposed the adoption and requested Mary to sign no papers.
That Richard did all of this for Mary, her older son, and the baby, after Richard knew she was pregnant and before the baby was born, is un-contradicted in the record.

. In re Adoption of Noble, 349 So.2d 1215 (Fla. 4th DCA 1977). Accord In re Adoption of Lewis, 340 So.2d 126 (Fla. 1st DCA 1976), cert. denied, 346 So.2d 1248 (Fla.1977); In re Adoption of Gossett, 277 So.2d 832 (Fla. 1st DCA 1973).

. Smith v. Moore, 481 So.2d 36 (Fla. 1st DCA 1985); Turner v. Adoption of Turner, 352 So.2d 957 (Fla. 1st DCA 1977).

. E.g., cases cited supra note 2; Hinkle v. Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983), and cases cited therein.