59 So.2d 520 (1952)
STEETS
v.
GAMMARINO.
Supreme Court of Florida, Division A.
June 13, 1952.
Walter G. Arnold and Stanly & Arnold, Jacksonville, for appellant.
Fred S. Rizk and Chas. J. Regero, Jacksonville, for appellee.
TERRELL, Justice.
Joseph Gammarino and Jeanette Lane were married in Albany, Georgia July 16, 1943. Joseph Michael Gammarino, their only child and the subject matter of this litigation, was born August 8, 1944. Joseph Gammarino was in the Army at the time he married but was discharged in November 1945, and returned to Albany, Georgia. He has contributed nothing to the support of Joseph Michael Gammarino or his mother since he was discharged from the Army.
In November 1945 Joseph Gammarino filed his bill for divorce in Daugherty County, Georgia. On the day the bill was filed Joseph Gammarino extracted an agreement from Jeanette whereby temporary and permanent custody of their minor child was granted to Jeanette subject to the right of Joseph to visit him at any time and to have his custody and support him during the summer months if he so elects. The agreement also provided that Joseph be relieved of any claim for alimony account of the mother or support of the child. On August 24, 1946, final decree was entered divorcing Joseph and Jeanette Gammarino. The decree recognized and approved the agreement as to alimony, custody and support of the minor child.
Soon after the divorce Mrs. Gammarino moved to Fitzgerald, Georgia where she lived for about one year and then moved to Jacksonville, Florida. During this period Mr. Gammarino saw the child one time for about five minutes, contributed nothing to its support and evidenced no interest in it. In January 1948, Jeanette Gammarino was married to Andrew Steets in Jacksonville where they have acquired a home and have resided since their marriage. In August 1950, Andrew Steets petitioned the Circuit Court praying that he be permitted to adopt Joseph Michael Gammarino, his stepson, then six years old. Simultaneous with filing the adoption petition the mother filed her written consent to the adoption. Joseph Gammarino, seasonably filed his answer and objections to the adoption. Pursuant to Section 72.15, Florida Statutes 1941, F.S.A., the Florida State Welfare Board made an investigation which resulted in the following finding:
"The Child who was born August 8, 1944, has been with the mother since birth and under the care of the petitioner since his marriage to the mother. He receives excellent care and affection. The natural mother has executed a proper consent to the adoption. The natural father objects to adoption and has filed a formal objection with the Court. A parent-child relationship has been maintained between the petitioner and the child listed in the adoption petition. The child has no knowledge of his father, as he has had no contact with him. It is felt that the petitioner is capable of providing a proper home; however, the availability of the child for adoption depends upon whether or not the rights of the natural father should be permanently terminated."
A Special Master was appointed, testimony was taken and a finding was entered recommending that a decree favorable to *521 adoption be granted. Exceptions to the Special Master's report were proffered, testimony on the part of appellee was then taken by the chancellor, a final decree was entered sustaining the exceptions to the Master's report and dismissing the petition with prejudice. This appeal is from the final decree.
The point for determination is whether or not the chancellor committed error in dismissing the petition and thereby denying the application of appellant, stepfather, to adopt his stepson.
The substance of appellee's testimony was that when Mrs. Gammarino, now Mrs. Steets, moved to Jacksonville, Florida, Joseph Gammarino did not know her address and in fact did not find it out until he was notified of the petition for adoption, at which time he employed counsel and came to Florida to resist the adoption proceedings. The chancellor did not in terms ground the final decree on lack of notice to appellee of the child's whereabouts but on the ground that the testimony failed to show reasons for severing the father-son relationship, and that in view of the decree of divorce the facts failed to show that it would be for the best interest of the child to grant the adoption because it does not appear that the father had abandoned the child.
We think the evidence as a whole shows that appellee was indifferent to the child from the time of its birth and never assumed responsibility for its most elementary needs. Notwithstanding the agreement secured from his wife that he would never be required to pay her alimony or support for the child except when he took him during the summer months he has never been interested enough to ask for the child in the summer despite the fact that he knew definitely of his mother's whereabouts for more than a year after the divorce and the Special Master found that if he did not know the address of the wife and child in Jacksonville he could easily have found out by inquiring of the wife's relatives whom he knew and who were easily accessible to him.
The record further discloses that despite the fact that the child was more than six years old when the evidence was taken the father has contributed nothing to its support since it was about one year old and has never been interested in having its custody for the summer months. There had never been any father-son relationship on the part of appellee. As against this indifference on the part of the natural father it is shown that the stepfather, appellant, has assumed full responsibility for all the child's needs and requirements, including the love and affection of a natural father and that he has carried this burden since the child was about three years old. The Special Master found that the stepfather had provided a comfortable home for the child and its mother and that the home life is conducive to the health, happiness and welfare of the child. He further found that the stepfather was a fit and proper person to become the adoptive father and the welfare of the child would be best served by granting the petition. The Welfare Board found that appellant was giving the child excellent care and attention, that it has no knowledge of its father and that it enjoys a parent-child relationship with the stepfather.
It is a very serious matter to take a child from the natural parent and place it in the hands of another but the courts of this country have not hesitated to do so when the child's welfare required. Here we are confronted with a case in which the natural father has never shown the slightest interest in his child until this suit was brought, at which time he was more than six years old and is now almost eight years old. He has contributed nothing to the child's support but made an agreement with his mother to relieve him of that, the child does not know him, his conduct for five years or more reveals a complete withdrawal from and neglect of parental duty or responsibility. He has never performed the natural and legal obligation to care for and support the child. What more is required to constitute abandonment on the part of a parent?
The stepfather who applied for adoption has met all these obligations since his marriage to the mother in 1948. The mother has given her consent to the adoption, *522 the stepfather has a home and an income sufficient to take care of the child, he loves it and treats it as his own. He is conscious of the intangibles, affection, love, fatherly guidance, the feeling of being wanted, its importance as a social unit and the fact that these must be mingled with bread and butter if the child is not to become maladjusted and a liability instead of an asset to society.
The record shows a clear case of abandonment so the chancellor was in error in dismissing the petition. His decree is accordingly reversed with directions to grant the adoption.
Reversed.
SEBRING, C.J., and THOMAS and HOBSON, JJ., concur.