473 So.2d 1376 (1985)
Patricia WEBB, Appellant,
v.
Larry Mayburn BLANCETT, and Vicki Lynn Blancett, Appellees.
No. 84-1241.
District Court of Appeal of Florida, Fifth District.
August 15, 1985.
*1377 Deborah Weage, Staff Atty., Seminole County Bar Assoc. Legal Aid Society, Casselberry, for appellant.
Marcia L. Lippincott, P.A., Orlando, for appellees.
ORFINGER, Judge.
Patricia Webb, the natural mother of the minor child Deliverance Lynn Webb (Dee), appeals a final judgment granting appellee's petition for adoption. Because we find that the trial court did not make a ruling on the threshold issue which had to be determined in order to support a judgment of adoption here, we must reverse for further proceedings.
Dee was born August 11, 1975. She has resided with appellees since she was six weeks old. Dee's natural father consented to the adoption; her mother did not. The trial court reviewed the sad story of the mother's dissolute and criminal life, and concluded that she was an unfit mother. In reviewing the events of the nine year period during which Dee had lived with the appellees, the trial court also concluded that the child's best interest would be promoted by the adoption. Both these findings are amply supported by the evidence, but the statute requires more.
Adoption, unknown to the common law, exists in Florida by virtue of Chapter 63, Florida Statutes. Section 63.062(1), Florida Statutes (1983) says:
Unless consent is excused by the court, a petition to adopt a minor may be granted only if written consent has been executed after the birth of the minor by:
(a) The mother of the minor.
(b) The father of the minor, ...
The natural father formally consented. Lack of consent may be excused by the court if the court finds that the non-consenting parent has "abandoned the child." § 63.072(1), Fla. Stat. (1983). There are other grounds for excusing consent, but "abandonment" is the only basis on which the court could excuse the mother's lack of consent in this case.
It is clear from the record that the trial court believed that abandonment was not an issue. After the petitioners rested their case, appellant's counsel moved for an involuntary dismissal of the petition for adoption on the ground that petitioners had not carried their burden of proof on the issue of abandonment, suggesting that proof of abandonment was "... the only basis upon which [in this case] consent can be excused ...". In denying that motion, the court said:
Miss Weage, I don't want to pursue that. I don't believe that to be the law, you know, and I, as I indicated earlier, I don't believe a case of abandonment has been made, but I think the true issue is whether there is a fitness on the part of Pat to rear the child and whether, you know, her lifestyle, her social and criminal history is one that puts that in issue.
The continuing dialogue between the court and counsel indicates the confusion as to the legal definition of "abandonment." Indicative of this is the request by counsel for petitioners that the court focus on the test for abandonment, "... the shirking of parental obligations and duties." In response, the court indicated its disagreement, stating that the natural mother's failure *1378 to undertake her obligations and responsibilities went to her fitness, rather than to her intent. This response was not correct, and because we must remand this case, we believe that a review of the standards for "abandonment" in adoption cases would be helpful.
In Hinkle v. Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983) we said:
Abandonment in this context [adoption] has been defined as "conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to the child." In the Interest of D.A.H., 390 So.2d 379, 381 (Fla. 5th DCA 1980); Solomon v. McLucas, 382 So.2d 339, 344 (Fla. 2d DCA 1980).
Id. at 985.
Settled purpose, or intent, is not necessarily demonstrated by words, but is often demonstrated by conduct. In fact, conduct may directly contradict words, and when the issue of mental intent is involved in a legal action, it is up to the trier of fact to determine whether the words or conduct of a party demonstrates the requisite intent. Even in criminal actions, intent, as a state of mind, is not easily proved by direct evidence and may be proved by circumstantial evidence. Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982), pet. denied, 426 So.2d 25 (Fla. 1983). In Hinkle, we indicated that the shirking of parental duties and obligations may be evidence of the intention to permanently forego all parental rights, thus evidence of abandonment, and so it is. The failure of a parent to support a child, when able to do so, although not conclusive, is a relevant factor to be considered. Solomon v. McLucas, 382 So.2d 339 (Fla. 2d DCA 1980). So, when there is clear and convincing evidence that over a long period of time a parent has completely ignored and shirked all parental duties, obligations and responsibilities which nature and society cast upon him or her, such evidence may be sufficient to convince a trier of fact of that parent's intent to permanently forego all parental rights to the child in question, thus proof of "abandonment." In other words, clear neglect of parental duties and obligations owed to a child may be tantamount to an abandonment of the child, depending on the particular circumstances of each case. Words or expressions of love and concern by the natural parent after an adoption proceeding has commenced may not be persuasive to the fact finder when that parent's conduct prior to the proceeding indicates a lack of concern and a shirking of obligations, and will not, in themselves, preclude a finding of abandonment. In this type of case it may truly be said that actions often speak louder than words.
Although we are not called upon to decide whether the definition of abandonment in a Chapter 39 dependency proceeding applies in adoption proceedings as well, and consequently we do not do so, it is interesting to note that section 39.01(1), Florida Statutes (1983) looks to the parent's conduct in determining whether there has been an abandonment when it says:
... If a parent's efforts to support and communicate with the child during such a 6-month period are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
So too, in an adoption proceeding, where the contacts between the contesting parent and the child are determined only to be marginal such as do not evince a settled purpose to assume parental duties and responsibilities, this factor, along with others, may be considered in determining the issue of abandonment. In Steets v. Gammarino, 59 So.2d 520 (Fla. 1952) the supreme court said:
It is a very serious matter to take a child from the natural parent and place it in the hands of another but the courts of this country have not hesitated to do so when the child's welfare required. Here we are confronted with a case in which the natural father has never shown the slightest interest in his child until this suit was brought, at which time he was more than six years old and is now almost eight years old. He has contributed nothing to the child's support but made an agreement with his mother to *1379 relieve him of that, the child does not know him, his conduct for five years or more reveals a complete withdrawal from and neglect of parental duty or responsibility. He has never performed the natural and legal obligation to care for and support the child. What more is required to constitute abandonment on the part of a parent?
Id. at 521. See also In re Adoption of Lee, 174 So.2d 87 (Fla. 2d DCA 1965). Many of the factors found in Steets are present here, so contrary to the position taken in the concurring opinion in this case, there could be a legal, conscientious and proper finding of abandonment based on the evidence before us. There was clearly some confusion below as to what might constitute evidence of abandonment, as indicated by the following comment by the trial judge:
Mr. Whigham attempts to make a case of abandonment. I, in reading the case law, as I've indicated, I don't know. He, of course, his argument points out the ways in which the Court might view abandonment as having, in a sense, come into existence here; that the quality of the contact that Miss Webb has maintained, while they have been ... some contact over the years, that, at first blush, would seem to say ... that she has no settled purpose to permanently forego her interest in the child. If you look behind those contacts to look at the true quality of them, it may well be that there has been an abandonment, in contemplation of the law. The Court, however, does not want to base its decision on that because the circumstances ... are subject to argument as to ... what has been the quality of the contact. ANd [sic] when you're going to terminate parental rights, it need not ... it should not be on something that is unclear, questionable.
We view, as Mr. Whigham recognizes, a certain natural justice by virtue of, I guess, a birth right of a parent, to maintain that relationship with a child. On the other hand, certain natural justice requires that where the child has, in effect, been placed in the home of the Blancetts for substantially eight years, that there is a certain justice called for under those circumstances.
We do not suggest to the trial court what finding should be made. We hold only that the trial court must rule, one way or the other, on the issue of abandonment. The trial court discussed the evidence as it related to the issue of abandonment, but concluded that it need not base its decision on that aspect of the case. Appellees urge us to affirm the judgment because, in their view, the evidence strongly supports a finding of abandonment, and a trial judge should be affirmed if he reaches the correct result, albeit for an incorrect reason. While we do find evidentiary support for appellee's argument that Dee has been abandoned by her mother, because of the nature of this proceeding, we believe that such finding should be made by the trial court. As this court said in In re the Adoption of Braithwaite, 409 So.2d 1178 (Fla. 5th DCA 1982).
The severance of a parent-child relationship is an extreme and harsh judicial act, and it should not be done unless the trial judge is convinced that the statutory basis for this remedy has clearly been established ... [Footnotes omitted].
Id. at 1179.
Therefore, because the trial judge heard the testimony and observed the witnesses, and is in the best position to evaluate the evidence, we reverse the judgment and remand the cause to the trial court for a determination on the issue of abandonment, the threshold issue to be determined here before the court may reach the "best interest" question. The trial court cannot decide this case on the child's best interest unless there has been an abandonment by the non-consenting natural parent. Hinkle v. Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983). The trial court may, in its discretion, take additional testimony on the relevant issue or may decide the question on the record already made.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
COWART, J., concurring specially with opinion.
*1380 COWART, Judge, concurring specially:
I agree that this case should be reversed and have no objection to a remand for further judicial consideration in this instance. Further, I agree that "under one concept"[1] of abandonment some fact-finders could find that Dee has been abandoned by her mother; but that concept is the legislative definition of abandonment contained in section 39.01(1), Florida Statutes, and that statute, if constitutional, is inapplicable to this case. I concur specially because the evidence also well supports a factual finding that the child was not abandoned by her mother. In fact, the record indicates that, using the correct definition, the trial judge could not conscientiously bring himself to find that the evidence clearly and convincingly proved that the mother had truly intended to abandon her child in this case (which in effect was a finding against the prospective adoptive parents who had the burden of proof to prove abandonment by clear and convincing evidence) but feeling strongly about the mother's unfitness and the best interests of the child, erroneously granted the adoption for those insufficient reasons. The trial court stated:
I don't believe a case of abandonment has been made .. .
The case law definitions of abandonment is hard for me to think that the Petitioner could prevail upon that theory. Abandonment, to justify adoption, contemplates conduct that evinces a settled purpose on the part of the parent permanently to forego all parental rights and to relinquish all parental claim to the child.
Because the definition is case in the light of the intent of the mother ... And there's enough ... contact over the years and comings and goings ... for me to say that there is not a, quote settled purpose to permanently forego all parental rights.
* * * * * *
[I]t does not appear to me to be abandonment, as that term is applied in adoption proceedings. A well-settled purpose, as the case law speaks of, to have nothing to do with the child.
It should be noted that the failure of the proposed adoptive parents to prove abandonment by the natural mother does not necessarily mean she is entitled to the child's actual custody. The question of who should have the actual custody of the child can be resolved legally solely upon a factual finding of unfitness of the natural parents and the best interests of the child. If, as it has been said, adoptions really occur in the heart, and if persons who would adopt want only to care for and help the child in its best interest, the practical difference may be only that the natural mother will retain her right to visit her child.
NOTES
[1] The trial court stated: "I think for, you know, all of these reasons, that the Petitioner's [sic] have made out a case that of substantial unfitness. That there may well also be abandonment, under one concept, but the Court's not going to base its decision on that aspect of the case. There is no question, having, you know, answered that threshold question, that the best interest of Dee is served, has been, will be served, in my judgment, by the Blancetts." (emphasis supplied).