917 So.2d 236 (2005)
M.A.F., Father of D.P.F. and M.R.F., Children, Appellant,
v.
E.J.S., Stepfather of D.P.F. and M.R.F., etc., Appellee.
No. 5D04-4130.
District Court of Appeal of Florida, Fifth District.
December 9, 2005.
*237 Susan Rae Giacoletto and Linda L. Gaustad of The Law Office of Linda L. Gaustad, P.A., Orange City, for Appellant.
E.J.S., Stepfather of D.P.F. and M.R.F., Enterprise, in proper person.
TORPY, J.
In this pending adoption proceeding initiated by E.J.S. ("Stepfather"), M.A.F. ("Father") challenges an order terminating his parental rights and excusing his consent to the adoption of his minor children, based on a finding of abandonment. We affirm.
Stepfather and the mother of the minor children ("Mother") were married on April 21, 2001. At some point before Christmas of 2002, they requested that Father sign a waiver so that Stepfather could adopt Mother's and Father's two children. When Father refused, the instant petition to terminate Father's parental rights pending adoption was filed in January of 2003.
Two children were born to the marriage of Father and Mother  D.P.F., a son, born March 28, 1987, and M.R.F., a daughter, born February 16, 1991. Father and Mother divorced in March of 1997. Based on Father's stipulation, Mother was awarded sole parental responsibility in the dissolution judgment, and visitation was within her sole discretion. The dissolution judgment required Father to pay child support in the amount of $384 per month.
During most of 1997, and part of 1999, Father was either in prison or in a drug rehabilitation facility. Mother took the children to visit with him at the rehabilitation facility. Prior to October 2000, when Father was not confined, he had visitation with the children. According to Mother, Father's visitation during this interval was "sporadic" because Father frequently failed to keep appointments for scheduled visits. Between October of 2000 and January of 2003, Father made no efforts to see or call the children except once in 2001 and once around Christmas of 2002 for 15 minutes. Additionally, Father occasionally sent a card, letter or email to the children. Father maintained at trial that his lack of frequent contact with the children during this period was due to interference by Mother, but the trial judge rejected Father's explanation as not credible.
At the time the petition was filed, Father was in arrears in child support by over $18,000. He had last paid a support payment of $100.00 in March of 2001, even though he admitted that he earned $9,000 in 2001 and $8,000 in 2002. Father had quit one job to avoid paying support after Mother served his employer with an income deduction order. Father's girlfriend testified that in September of 2001, she and Father moved to New Orleans. They left Florida near the end of September, arrived in New Orleans "the last of October, the 1st of November," and then moved back to Florida in December. During the time they were traveling, they supported themselves from their joint savings account because neither one of them was working. Based on this evidence, the trial court determined that Father's failure *238 to pay support was willful, a finding Father does not challenge on appeal.
A court-appointed guardian ad litem testified that, as of the time of trial, the youngest child, then thirteen, did not remember any activities with Father and only thought she remembered what he looked like. She considered Father to be a stranger. Although the older child remembered much about Father, he harbored much anger towards him.
On appeal, Father raises several issues, only one of which merits discussion: whether the lower court's finding that Father abandoned the children is supported by competent substantial evidence.
Under the Florida Adoption Act, chapter 63, Florida Statutes, written consent of the biological parents is required before a petition to terminate parental rights pending adoption may be granted. § 63.062(1), Fla. Stat. (2004). Written consent may be waived or excused, however, if the court finds, by clear and convincing evidence, that the parent has abandoned the child. The Act provides in material part as follows:
(4) FINDING OF ABANDONMENT.  A finding of abandonment resulting in a termination of parental rights must be based upon clear and convincing evidence that a parent or person having legal custody has abandoned the child in accordance with the definition contained in s. 63.032(1). A finding of abandonment may be based upon emotional abuse or a refusal to provide reasonable financial support, when able, to a birth mother during her pregnancy. If, in the opinion of the court, the efforts of a parent or person having legal custody of the child to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. In making this decision, the court may consider the conduct of a father toward the child's mother during her pregnancy.
(a) In making a determination of abandonment at a hearing for termination of parental rights pursuant to this chapter, the court must consider, among other relevant factors not inconsistent with this section:
. . .
2. Whether the person alleged to have abandoned the child, while being able, failed to provide financial support;
§ 63.089(4)(a)(2), Fla. Stat. (2004) (emphasis added). The Act defines the term "abandoned" as follows:
(1) "Abandoned" means a situation in which the parent or person having legal custody of a child, while being able, makes no provision for the child's support and makes little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibilities. If, in the opinion of the court, the efforts of such parent or person having legal custody of the child to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. In making this decision, the court may consider the conduct of a father towards the child's mother during her pregnancy.
§ 63.032(1), Fla. Stat. (2004).
As we have explained, a finding of abandonment must be predicated on "conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to the child." Webb v. *239 Blancett, 473 So.2d 1376, 1378 (Fla. 5th DCA 1985). Because the ultimate issue is the intent of the parent, as determined by reasonable inferences that may be drawn from the conduct of the parent, it is a question of fact for the trial judge. Id. The judge must consider the factors enumerated in the statute and all "other relevant factors ...." § 63.089(4)(a), Fla. Stat. (2004). It is the trial judge's discretionary function to determine the weight to attribute to each factor.
Contrary to Father's argument, there was substantial competent evidence to support the trial court's finding that Father abandoned the children under the requisite legal definition and burden of proof. Father gave up the majority of his parental rights and responsibilities when he stipulated that Mother would have sole parental responsibility for the children in 1997. Although Father was about to enter prison or drug treatment at that time, after he was released, he never sought to modify the divorce decree, although he was aware that he could. His excuse  that he did not have the money to hire a lawyer  was apparently rejected by the trial court who concluded that Father's monetary woes were specious.
While there was testimony that Father visited the children once in 2001 and once in 2002 for a few minutes and that he sent cards, letters and at least one email, his efforts at communicating with the children were so insubstantial that his 13-year-old child barely remembered Father. This evidence clearly supported the trial court's finding that the contacts were "marginal," and the Act provides that such "marginal" contacts are not sufficient to avoid a finding of abandonment. See § 63.032(1), Fla. Stat. (2004).
It is uncontroverted that Father had substantial support arrearages and stopped paying child support in March of 2001, even though he worked, had income and had a joint savings account with his girlfriend after that time. Although, as Father points out, a failure to pay support, in and of itself, is not conclusive, it is a proper factor that the court may consider in its determination. Webb, 473 So.2d at 1378.
The trial judge weighed the conflicting testimony, considered the correct factors and reached the factual conclusion that Father's conduct evinced an intent to "abandon" his children, as that term is statutorily defined. Given our limited standard of review, we are unable to conclude that the lower court committed reversible error.
AFFIRMED.
SAWAYA, J., concurs.
GRIFFIN, J., dissents without opinion.