NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of B.W.G and B.J.G.,
children.                                        )
                                                 )
_____)
                                                 )
N.A.G.,                                          )
                                                 )
                Appellant,                       )
                                                 )
v.                                               )          Case No. 2D16-1441
                                                 )
J.L.G.,                                          )
                                                 )
                                                 )
                Appellee.                        )
_____)

Opinion filed August 12, 2016.

Appeal from the Circuit Court of Pinellas
County; Patrice W. Moore, Judge.

Deborah L. Thomson, Tampa, for Appellant.

Ingrid Anderson, Clearwater, for Appellee.


PER CURIAM.


        N.A.G., the mother, appeals the order terminating her parental rights to

her two children, B.W.G. and B.J.G.  She argues that the trial court incorrectly found

that she abandoned her children.  We agree.  Not only is the record devoid of any facts

to support the finding of abandonment as a matter of law, but the trial court also misapplied the definition of abandonment under chapter 63, Florida Statutes (2015). Because the finding of abandonment is not supported by competent substantial evidence, we reverse.

**BACKGROUND**

The mother and father divorced in 2012, and they have both remarried. Their marital settlement agreement included a "temporary incapacity" clause providing that in the event a parent was unable to care for the children, all timesharing rights would be suspended and the other parent would assume sole responsibility for the children. In 2012, when the mother attempted to pick up the children while intoxicated, the father invoked the clause by sending a letter explaining that he was terminating her timesharing rights and retaining full custody of the children. The mother challenged the letter and the parties proceeded to negotiate timesharing.

The record indicates that the children—who thereafter resided full-time with the father and his new wife—enjoyed nightly phone calls and frequent Skype sessions with the mother. However, the mother testified that the father was often in the background and would punish the children for acting out by prohibiting them from talking to her. At one point the father changed the children's schools without notifying the mother. When the mother attempted to visit the children at school, she was informed by the principal that her children were no longer enrolled. The father explained that he "wanted to get away" from the marital home. However, the father and his new wife did not inform the mother that the children had changed schools. She did not know where

her children were and began placing panicked and threatening phone calls and text messages to the father, his wife, and his attorney.

The father and his wife obtained injunctions against the mother that effectively prevented her from contacting the father or his wife and consequently the children. The mother acknowledged that she made the threatening phone calls, explaining that she "lost it" after the father repeatedly refused to let her see the children on any birthdays. After she filed a motion to enforce timesharing, the court ordered that she was entitled to supervised visitation.

The father and his wife filed a petition for termination of parental rights for the proposed adoption of the minor children by the wife in 2014. The petition alleged that despite being able, the mother had failed to provide for and communicate with the children since March 2013. Further, the petition alleged that this failure demonstrated a willful disregard for the safety and welfare of the children. A trial was conducted in February 2016.

In its termination order, the trial court specifically found that the father and his wife alienated the children from their mother. The court highlighted their testimony that their intention was to move as far away from the mother as possible. Indeed, the court found that "the [f]ather placed barriers in the [m]other's way to keep her from spending quality time with the children." However, the court found that notwithstanding these barriers, the mother had made only minimal efforts to contact or support her children despite also acknowledging that it was "understandable" that the mother would not have attempted to contact the father and his wife while the injunctions were in effect.

After essentially finding that the mother should have done more to communicate with or support her children, the court concluded that she abandoned her children.

## LEGAL FRAMEWORK

Chapter 63 allows a parent or person having physical custody of a child to seek termination of parental rights and subsequently adopt the child.  See § 63.087(4); see also V.C.B. v. Shakir, 145 So. 3d 967, 968 (Fla. 4th DCA 2014).  If a parent does not consent to the termination, the court may enter a judgment terminating parental rights if it determines by clear and convincing evidence supported by written findings of fact that the parent has been given notice and has abandoned the child.  See § 63.089(3)(e).  "Abandonment" is defined as a situation in which

> the parent or person having legal custody of a child, while being able, makes little or no provision for the child's support or makes little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibilities.  If, in the opinion of the court, the efforts of such parent or person having legal custody of the child to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.

§ 63.032(1); see also M.A.F. v. E.J.S., 917 So. 2d 236, 238 (Fla. 5th DCA 2005) (explaining that a finding of abandonment under chapter 63 "must be predicated on 'conduct which manifests a settled purpose to permanently forgo all parental rights' " (quoting Webb v. Blancett, 473 So. 2d 1376, 1378 (Fla. 5th DCA 1985))).

In making an abandonment determination under this chapter, the trial court must consider, among other factors, "[w]hether the actions alleged to constitute abandonment demonstrate a willful disregard for the safety or welfare of the child." § 63.089(4)(a)(1).  Specifically, the inquiry is whether the parent has demonstrated a

- 4 -

commitment to the child, which has been defined as "a manifestation of a willingness to accept custody and assume responsibility for the support and maintenance of the child." G.T. v. Adoption of A.E.T., 725 So. 2d 404, 410 (Fla. 4th DCA 1999); see also Solomon v. McLucas, 382 So. 2d 339, 346 (Fla. 2d DCA 1980) ("[A]bandonment is absolute, complete, and intentional[] and must be established by clear and convincing evidence."); M.M. v. Adoption of J.T.M., 821 So. 2d 1134, 1138 (Fla. 4th DCA 2002) (holding that "[a]bandonment, in its purest form, requires a complete relinquishment of responsibility" and a "deliberate action by the parent to leave the child behind or the refusal to assume parental responsibilities").

This court must determine if the trial court's ruling is supported by competent substantial evidence, and our review of the trial court's termination order is highly deferential. See R.C. v. Dep't of Children & Family Servs., 33 So. 3d 710, 714 (Fla. 2d DCA 2010).

**DISCUSSION**

Even acknowledging the highly deferential standard of review of this kind of order, we hold that the trial court's finding that the mother abandoned her children is not supported by competent substantial evidence. In particular, the evidence was not legally sufficient to support a finding that the mother's actions evinced a settled purpose to forgo and relinquish all parental responsibilities. See § 63.032(1); see also G.T., 725 So. 2d at 410. Termination may not be based on involuntary abandonment. See T.H. v. Dep't of Children & Family Servs., 979 So. 2d 1075, 1080 (Fla. 2d DCA 2008). For example, incarceration alone does not constitute abandonment as a matter of law. Id.; see also J.T. v. Dep't of Children & Family Servs., 819 So. 2d 270, 272 (Fla. 2d DCA

2002) (holding that it is "improper to terminate parental rights if a parent is unable to financially provide for the child or to assume parental obligations due to incarceration"). This is so because an incarcerated person has very limited opportunities to assume parental duties. See R.R. v. M.M., 143 So. 3d 449, 450 (Fla. 2d DCA 2014).

Similarly, in this case, because of the injunctions, the no-contact order, and the actions of the father and his wife, the mother's ability and opportunity to contact, locate, and communicate with her children were extremely limited and often beyond her control. In spite of these obstacles, the mother sent the children birthday cards, Christmas cards, and gift certificates, attended visitation at the Children's Justice Center before the father prevented visitation, voluntarily entered rehabilitation for the sole purpose of reuniting with her children, and successfully completed a diversion program.

The mother testified that her frantic phone calls—which led to the injunctions and no-contact order—stemmed directly from the father and his wife's efforts to alienate her. The father admitted that he purposely moved the children away from the mother. The record reveals that the father's wife, for whatever reason, told the children that she would be upset if they kissed their mother. The father's method of punishment was to prohibit the children from communicating with their mother over Skype. Accordingly, the record illustrates that the father and his wife alienated the mother from her children and then claimed that the mother abandoned the children.

In this regard, we also note that the trial court's final judgment is internally contradictory. The trial court found that the father and his wife alienated the mother from her children, explaining that that they "placed barriers in the [m]other's way to keep her from spending quality time with the children." But the trial court concluded that

- 6 -

despite these barriers, the mother should have done more.  This finding overlooks the definition of abandonment under chapter 63, specifically the requirement that the parent's actions must show an intent to forgo all parental responsibilities.  By finding that the mother's "minimal efforts" to contact and spend time with her children were not enough, the court essentially recognized that the mother, in fact, made efforts to assume parental responsibilities, which is antithetical to the notion that she relinquished all of her parental responsibilities.  Because the trial court's legal conclusion that the mother abandoned her children is not supported by competent substantial evidence, we reverse the final judgment terminating the mother's parental rights.

         Reversed and remanded.


CRENSHAW, MORRIS, and LUCAS, JJ., Concur.