520 So.2d 654 (1988)
David Wayne SMITH, Appellant,
v.
Jose Antonio FERNANDEZ, Appellee.
No. 86-1439.
District Court of Appeal of Florida, Third District.
February 23, 1988.
William Y. Sayad, Jr., Miami, for appellant.
Ansel, Simon & Cohn and Donna E. Cohn, Hollywood, for appellee.
Before BARKDULL, NESBITT, and JORGENSON, JJ.
JORGENSON, Judge.
David Wayne Smith appeals from an order of the trial court granting the petition of Jose Antonio Fernandez to adopt Smith's natural son, David. We reverse upon a holding that the record fails to establish by clear and convincing evidence Smith's abandonment of his child.
*655 David was born in 1980 while Smith was married to David's mother, Michelle. Smith and Michelle separated in September, 1982, and divorced in April, 1983. The order of dissolution of marriage provided for shared parental custody of David and designated Michelle the primary custodial parent. The dissolution order required Smith to pay weekly child support of $50.00. Smith never made any child support payments, nor did Michelle institute any enforcement proceedings. Michelle married Jose Antonio Fernandez in November, 1983, at which time Fernandez assumed David's support. From the time of the separation until his move to Tallahassee in December, 1983, Smith saw David only sporadically. After his move, Smith visited David twice: on David's birthday in August, 1984, and on Father's Day in June, 1985. Smith maintained periodic telephone contact with Michelle to inquire about David's welfare. Smith attempted to have David visit him in Tallahassee by the child's traveling with Smith's parents on such a trip. Michelle rejected the proposal on the basis of distance. In August, 1985, Fernandez filed a petition to adopt David. Smith filed an answer requesting that the petition be denied. Following a hearing in March, 1986, the trial court granted the petition. The court found that Smith had abandoned David by his failures to pay child support and to exercise his visitation rights.[1]
In the context of termination of parental rights, abandonment is defined as "conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to the child." In re D.A.H., 390 So.2d 379, 381 (Fla. 5th DCA 1980); Hinkle v. Lindsey, 424 So.2d 983, 985 (Fla. 5th DCA 1983); Solomon v. McLucas, 382 So.2d 339, 343 (Fla. 2d DCA), rev. denied, 389 So.2d 1112 (Fla. 1980). The Chapter 39 definition of "abandonment" for permanent commitment of a child to the Department of Health and Rehabilitative Services is narrower than that for Chapter 63 adoption which controls the instant case.[2] However, the standards for establishing abandonment are identical: a finding of abandonment must be supported by clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re R.W., 495 So.2d 133, 135 (Fla. 1986); In re J.R.C., 480 So.2d 198, 200 (Fla. 5th DCA 1985); Hinkle, 424 So.2d at 985; In re Serpe, 395 So.2d 1240, 1241 (Fla. 4th DCA 1981); Solomon, 382 So.2d at 344; In re Adoption of Noble, 349 So.2d 1215, 1216 (Fla. 4th DCA 1977).
The trial court based its adoption order upon Smith's nonpayment of child support and his infrequent contacts with David. Neither reason may serve to deprive Smith of his parental rights. "The failure of a natural parent to support a child, while a relevant circumstance to be considered, is not in and of itself a sufficient basis for permitting the adoption of the child over the objection of the parent." Hinkle, 424 So.2d at 985; Solomon, 382 So.2d at 345. Although Smith's nonpayment of child support is not to be condoned, this case is not before us on a contempt or *656 enforcement action. His nonpayment may indeed be attributable to his minimal salary, at least while he was living in Tallahassee. Regardless of the reasons for Smith's remissness in paying child support, his nonpayment does not constitute "a settled purpose to permanently forego all parental rights."
Neither were Smith's postdivorce attempts to maintain a relationship with David so minimal as to show abandonment. The infrequent contacts between Smith and his child could have been largely due to the long distance between Tallahassee and Miami and Smith's straitened economic circumstances. Smith did maintain telephone contact with Michelle concerning David. Notwithstanding the validity of her reasons, Michelle refused at least one requested visitation on the grounds of distance.[3] Although the record contains no indication that Michelle hindered Smith in assuming a more active role in David's life, the geographical distance and David's young age militated against regular visitation. Under these circumstances, the minimal contact between Smith and his child is not a legally sufficient basis to terminate Smith's parental rights. See In re T.S., 464 So.2d 677 (Fla. 5th DCA 1985) (mother's failure to visit child in foster home for period in excess of six months not sufficient evidence of abandonment to terminate parental rights); In re T.C., 417 So.2d 775 (Fla. 3d DCA 1982) (evidence that three-and-a-half-year-old child had spent only fifteen weeks of her life in her mother's custody and that mother had left child with the Department of Health and Rehabilitative Services on three separate occasions was insufficient to show abandonment); Noble, 349 So.2d 1215 (facts that mother was unable to cope with many parental obligations, lived in another state, and visited child on only three or four occasions could not constitute sufficient evidence to terminate parental rights).
"It has been observed many times that the conduct of a natural parent may constitute neglect, indifference, or even irresponsibility for a child's welfare, but nevertheless may not amount to abandonment." Solomon, 382 So.2d at 345. "[E]ven though temporary failures and derelictions of parents may justify temporary deprivation of the custody of their children, it will seldom justify the permanent deprivation of parental rights resulting from the finality of an adoption decree." In re Adoption of Gossett, 277 So.2d 832, 834 (Fla. 1st DCA 1973). In this case, Smith's actions and inactions fail to manifest the complete lack of parental interest required for a finding of abandonment.
Because of the absence of clear and convincing evidence of abandonment, it is unnecessary to address Smith's claim that the trial court erroneously considered the best interests of the child in granting the adoption petition.
We reverse and remand to the trial court with directions to vacate the order of adoption.
Reversed and remanded with directions.
NOTES
[1] Section 63.072, Florida Statutes (1985), specifies the grounds for adoption where the natural parents withhold consent. It provides, in relevant part: "63.072 Persons whose consent to an adoption may be waived.  The court may excuse the consent of the following individuals to an adoption: (1) A parent who has deserted a child without affording means of identification or who has abandoned a child... ."
[2] Chapter 39 provides in relevant part:

39.01 Definitions.  When used in this chapter:
(1) "Abandoned" means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person responsible for the child's welfare, while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of such parent or legal custodian, or person primarily responsible for the child's welfare to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. The failure by any such person to appear in response to actual or constructive service in a dependency proceeding shall give rise to a rebuttable presumption of such person's ability to provide for and communicate with the child.
§ 39.01, Fla. Stat. (1985).
[3] custodial parent of a child also owes an obligation to the non-custodial parent, to encourage and nurture the parent-child relationship. It is often only too easy for the custodial parent to undermine and starve the non-custodial parent's contacts and relationships with the child, particularly where the parties are separated by long distance.
In re Adoption of Braithwaite, 409 So.2d 1178, 1180 n. 4 (Fla. 5th DCA 1982).