546 So.2d 1062 (1989)
Billie Ann WEBB, Appellant,
v.
Robert E. WEBB, Appellee.
No. 88-2445.
District Court of Appeal of Florida, Third District.
May 23, 1989.
As Modified on Denial of Rehearing August 21, 1989.
*1063 Akerman, Senterfitt & Eidson and Anthony J. O'Donnell, Jr., Miami, for appellant.
Papy, Weissenborn & Papy and Sheridan K. Weissenborn, Miami, for intervenor/appellee Jane Webb.
Before NESBITT, JORGENSON and LEVY, JJ.
JORGENSON, Judge.
Billie Ann Webb, natural mother of Bobby Webb, appeals from an order granting custody of her son to his stepmother. For the following reasons, we reverse.
In February, 1978, Billie Ann Webb[1] and Robert Webb were divorced. The trial court awarded custody of Bobby Webb, then ten months old, to the father and ordered liberal visitation with the mother. All parties were living in Miami. The father remarried, and, in 1981, he, his new wife Jane Webb, and Bobby moved from Miami to Jacksonville, Florida, without notifying Billie Ann Webb. There is evidence in the record that, although the mother attempted to contact her child on many occasions, the father and his wife thwarted those attempts. Bobby and his mother did not see each other for seven years.
In July, 1987, the father died in Jacksonville. In his will, Robert Webb appointed Jane Webb guardian of his son Bobby. After the father's funeral, Bobby came to Miami with his maternal grandparents and was reunited with his mother. On July 27, 1987, Billie Ann Webb filed a Verified Motion for Confirmation of Custody. The trial court entered a temporary order maintaining Bobby's presence in Dade County with his mother until a full hearing could be conducted. The trial court appointed a guardian ad litem for Bobby and ordered HRS to conduct a home study of Billie Ann Webb and a custody investigation of Jane Webb. The trial court also appointed a psychologist, Dr. Diane Lillesand, to perform a psychological evaluation of all interested parties. The guardian ad litem requested Dr. Michael Epstein, a child psychologist, to interview the child.
The HRS home study of Billie Ann Webb, dated December 12, 1987, concluded that there was "nothing of significance at this time to indicate that Billie Ann Webb would be unable to care for the child. She verbalizes what appears to be a sincere commitment to him and a desire to have him in her care." The HRS consultant recommended that "[t]he natural mother Billie Ann Webb appears to be an adequate maternal figure and could provide for her son, Bobby Webb."
Dr. Lillesand evaluated the mother, the paternal grandparents, Bobby, and Jane Webb and found Billie Ann Webb "essentially free from any mental illness or severe emotional problems which would cause her difficulties in raising a child." In her recommendations, Dr. Lillesand stated:
The difficulty with the present case is that there are no real "good guys", and it is also not clear what Bobby himself may want, or what might be in his best interests. On the one hand, he has been *1064 through a significant loss and any further disruption from what is familiar, or less of significant people in his life (his stepmother and stepbrothers) might be emotionally traumatic and harmful to him. In addition, Bobby himself wishes and believes that it was his father's wish that he should stay in Jacksonville with his stepmother. To be moved against his will is almost certain to be traumatic for him. Further, Bobby has many feelings of resentment toward his natural mother, fostered though they were by his father and stepmother, and only time, exposure to his mother and perhaps therapy will help him overcome them.
On the other hand, Bobby was deprived of a normal relationship with his mother largely (though not entirely) because of the actions of his father and stepmother. To leave Bobby where he is will almost certainly ensure that this estrangement will continue, and in a certain sense, the innocent will continue to be victimized. In addition, since Mrs. Webb has been estranged from Mr. and Mrs. Bruce [the paternal grandparents] for several years, it is highly unlikely that Bobby would be blocked, at least psychologically, from developing a loving relationship with his grandparents, who genuinely care about him.
Balancing these factors, and considering Bobby's long-term needs, it is recommended that Bobby be returned to live with his natural mother, Billie Maas. It is recommended that this transition be handled delicately, and that Bobby be allowed to retain contact with and visit his stepmother during and after the transition period.
At the hearing, Dr. Lillesand testified that:
I don't see problems with either woman [the mother or Jane Webb] as a parent, as a mother. There is certainly no implication  I would not think any implication that either one of them would be harmful to him or be a poor parent/caretaker for him. ...

Again, I see Billie as very capable of parenting and taking care of a child. She also has some personality characteristics which might make her at times less sensitive or at times less active on a child's behalf than perhaps she should be... . Testing did not show any major personality problems or characteristics that would interfere with them or render them unfit to be in contact with him. They both have the capacity to nurture. They both are loving people... . (Emphasis added.)
Dr. Lillesand also testified that Billie Ann Webb had a passive personality, suffered from a low level of psychological energy, and was "a very easily discouraged person." However, she stated that these problems "should not interfere with her [Billie Ann Webb's] ability to parent him [Bobby]." When asked about Billie Ann Webb's sparse contact with her son over the years, Dr. Lillesand stated that Billie Ann Webb's tendency to become easily discouraged or intimidated made it difficult for her to pursue contact with Bobby, especially in light of disputes with her former husband and Jane Webb over visitation and the distance between Miami and Jacksonville.
Dr. Michael Epstein conducted standardized tests on Bobby and interviewed him for one-half hour. At the hearing, Dr. Epstein testified by telephone that Bobby preferred being with his stepmother and perceived Jane Webb as "his psychological mother." Dr. Epstein opined that it was in Bobby's "best interest" to be in his stepmother's custody after his father's death.
At the hearing, Billie Ann Webb testified that she had not seen her son for seven years following his move to Jacksonville because his father and Jane Webb had thwarted visitation, she did not have the financial resources to travel to Jacksonville, and she had been injured in automobile accidents in 1980 and 1981. She testified that she worked five days a week and had to care for another child from her first marriage.
The trial court found:
1. That based upon the evidence submitted and the personal observation of the witnesses as they testified the Court *1065 finds that it is in the best interest of the minor child ROBERT E. WEBB that the primary custody remain with the stepmother and intervenor, JANE WEBB.
2. That it is in the best interest of the child ROBERT E. WEBB that he continue to reside with the Intervenor, JANE WEBB, who is the psychological mother of the minor child.
3. The Court further finds that it is detrimental that the minor child ROBERT WEBB be permanently removed from the Intervenor, JANE WEBB, in order to reside with his natural mother, BILLIE WEBB now known as BILLIE MAAS.
4. The Court finds, further, that the natural mother is unfit to be the primary residential custodian and that her explanation for failing to visit or to maintain any meaningful contact with the child is simply not believable. Rather than a sincere desire to parent this child, the evidence more strongly suggest [sic] that she is motivated in pressing her claim for custody in the hope of receiving financial benefits from the grandparents.
5. The Court finds from the evidence that the natural mother, BILLIE WEBB now known as BILLIE MAAS, has effectively abandoned the child and the Court further finds that she does not have sufficient interest and/or emotional energy as defined by the Court appointed psychologist, Dr. D. Lillesand to appropriately parent this child on a full time basis and therefore to place this child with her under these circumstances would not be in the child's best interest and it would be detrimental for the child.
The trial court abused its discretion in awarding custody to Jane Webb, Bobby's stepmother, in the absence of clear and convincing evidence that Billie Webb, Bobby's natural guardian and natural mother, was unfit or had abandoned her son. Section 744.301(1), Florida Statutes (1987), provides:
The mother and father jointly are natural guardians of their own children and of their adopted children, during minority. If one parent dies, the natural guardianship shall pass to the surviving parent, and the right shall continue even though the surviving parent remarries. If the marriage between the parents is dissolved, the natural guardianship shall belong to the parent to whom the custody of the child is awarded. If the parents are given joint custody, then both shall continue as natural guardians. If the marriage is dissolved and neither the father nor the mother is given custody of the child, neither shall act as natural guardian of the child. The mother of a child born out of wedlock is the natural guardian of the child.
The second district has held that, pursuant to section 744.301(1), the natural guardianship belongs to the parent to whom the custody of the child is awarded, but, if that custodial parent dies, the natural guardianship passes to the surviving parent, and the burden is then upon the person opposing this parental right to prove by clear and convincing evidence that the parent is unfit and that the best interests of the child would be promoted by giving custody to the nonparent. Lusker v. Lusker, 434 So.2d 951, 953 (Fla. 2d DCA 1983). Application of this clear and convincing evidence standard is based upon the well-established principle that "except in cases of clear, convincing and compelling reasons to the contrary the child's welfare is presumed to be best served by care and custody in the natural family relation by its natural parent." In re Vermeulen, 114 So.2d 192, 196 (Fla. 1st DCA), cert. denied, 116 So.2d 775 (Fla. 1959).
The Florida supreme court has held that "[w]hen the custody dispute is between a natural parent and a third party ... the test must include consideration of the right of a natural parent `to enjoy the custody, fellowship and companionship of his off-spring... . This is a rule older than the common law itself'." In re D.A.McW., 460 So.2d 368, 370 (Fla. 1984) (quoting State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla. 1957)). In D.A.McW., the supreme court emphasized that, in a custody dispute between a parent and a third party, the parent "would be entitled to custody once his *1066 ability to care for the children was established." 460 So.2d at 370 (citation omitted) (emphasis added).
Careful review of the record in this case shows that Billie Ann Webb's ability to care for Bobby was established and that there is no clear and convincing evidence that she is an unfit parent. The only evidence addressing the mother's present fitness[2] to care for her child was contained in HRS's 1987 home study report, Dr. Lillesand's report, and Dr. Lillesand's trial testimony. Without exception, that evidence showed Billie Ann Webb to be a fit parent to rear Bobby.
Furthermore, the trial court's finding that Billie Ann Webb had abandoned Bobby is not supported by clear and convincing evidence, the requisite standard to support a finding of abandonment. Smith v. Fernandez, 520 So.2d 654 (Fla. 3d DCA 1988). In Smith, this court held that a father who had made no child support payments for three years and visited his child only sporadically over a three-year period had not abandoned the child. Id. at 656. The father had moved to Tallahassee and had failed to exercise his visitation rights in Miami. This court stated that the infrequent contacts between Smith and his child "could have been largely due to the long distance between Tallahassee and Miami and Smith's straitened economic circumstances." Id. We noted that "[i]t is often only too easy for the custodial parent to undermine and starve the non-custodial parent's contacts and relationships with the child, particularly where the parties are separated by long distance." Id. at n. 3. Although Billie Ann Webb and her son did not see each other for seven years, the rationale of Smith applies nonetheless. The evidence is uncontroverted that the mother attempted to maintain contact with Bobby, sent gifts and cards, and tried to call him. There is also evidence in the record which indicates that the father and Jane Webb actively discouraged these contacts and that Billie Ann Webb found it difficult to pursue visitation in light of this resistance. Under Smith, these circumstances do not amount to clear and convincing evidence of abandonment.[3]
The record is replete with evidence that Jane Webb, Bobby's stepmother, is a loving, caring person with strong emotional and psychological ties to Bobby. However, in the absence of clear and convincing evidence that Billie Ann Webb is unfit or has abandoned Bobby, the relationship between Jane and Bobby is not controlling. See Paul v. Lusco, 530 So.2d 362 (Fla. 2d DCA 1988) (strong, significant relationship between child and half-sister does not control custody determination absent finding of natural mother's unfitness), rev. denied, 539 So.2d 475 (Fla. 1989).
Given the "rule older than the common law itself," we reverse the order granting custody of Bobby Webb to his stepmother. We remand this cause with directions that the trial court enter an order granting Billie Ann Webb's Motion for Confirmation of Custody.
Reversed and remanded with directions.
NOTES
[1] Billie Ann Webb has remarried and is now known as Billie Ann Maas.
[2] In custody proceedings, at issue are the parent's present circumstances. Peisach v. Antuna, 539 So.2d 544, 546 (Fla. 3d DCA 1989). The 1978 HRS home study report, prepared eleven years ago, was therefore not relevant to the question of whether Billie Ann Webb is currently a fit parent and should not have been considered by the trial court. Even if the 1978 report were relevant, it contains no clear and convincing evidence that Billie Ann Webb is an unfit parent.
[3] In D.A. McW., the court held that custody should be denied a natural parent "`only where it is demonstrated that the parent is disabled from exercising custody or that such custody will, in fact, be detrimental to the welfare of the child'." 460 So.2d at 370. The criterion of "detriment" could be satisfied by a clear and convincing showing of unfitness or abandonment, neither of which has been demonstrated on this record. Apart from those issues, we conclude that there has been no other clear and convincing evidentiary showing of detriment to the welfare of the child.