625 So.2d 988 (1993)
Jose Leonardo CALLE, Appellant,
v.
Noris CALLE, Appellee.
No. 92-2151.
District Court of Appeal of Florida, Third District.
October 26, 1993.
*989 Fitzgerald, Charlip, Delgado, Befeler & Portuondo and Luis Delgado, Miami, for appellant.
David S. Abrams, Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.
PER CURIAM.
A natural father appeals an order denying his motion for primary custody of his two youngest children in favor of their older sister and maternal grandmother. We reverse the order with directions to award the father custody of the two children.
The father and mother were married in Miami in 1981. The mother had two children from a prior marriage whom the father adopted. Sabrina and Leonardo, Jr. were born of the marriage, which was dissolved in 1988. In a property settlement agreement incorporated into the final judgment, it was agreed that the mother would maintain primary residential responsibility of all the children, with the father having reasonable visitation rights. The mother was to receive as child support $600 per month from the rental income of the parties' jointly owned property, plus an additional $1,000 per month from interest on a mortgage jointly owned by the parties. After the dissolution, the father returned to his native Medellin, Colombia to reside, but often returned to Miami to visit the children.
In February 1990, the mother was arrested at her home and indicted for importation, conspiracy to distribute, and the distribution of cocaine. Thirteen hundred pounds of cocaine and approximately $500,000 in cash were taken from her residence. Cocaine and currency were scattered throughout the home including the children's bedrooms. Ultimately, the mother pled guilty to the charges and was sentenced to twenty-five years in prison. Although the mother's sentences have been reduced, it is obvious she does not expect to be released from prison in the near future.
After the mother's arrest the children moved into and resided in at least three different homes. The eldest child, who had attained majority and is a full-time pre-med student at the University of Miami, cared for her three younger siblings, assuming the maternal role in the children's lives. The maternal grandmother who cannot speak any English provided additional home supervision, as did the children's maternal uncles. The mother maintained daily telephone contact with the children from prison.
Following the mother's arrest, the property providing the children with support under the property settlement agreement was seized by the federal government. As a result, the mother's family supported the children from the time of her arrest until the time of the custody hearing. Although the father made no further financial contribution to the support of the children, upon learning of the mother's arrest, he sent all four children airline tickets for passage from Miami to Medellin, with the request that they reside there with him. The children refused to go.
Ultimately, the father returned to Miami whereupon he filed an emergency ex-parte request for temporary change of custody of the two youngest children, Sabrina and Leonardo, ages nine and seven, together with a supplemental complaint to modify the final judgment and establish sole parental responsibility in him. The mother filed a petition to award temporary custody of the children to their maternal grandmother and oldest sister, age twenty.[1]
*990 Temporary custody was granted the father, and the matter was referred to a general master for the taking of testimony and the entry of a recommended order. The court-appointed psychologist, in pertinent part, advised:
Mr. Calle clearly loves his children, and wants to provide for them. He feels very hurt and rejected by [the two older siblings], and does not seem to be including them in his plans, perhaps because he feels that they would refuse to live with him. Mr. Calle is capable of being a good parent, although in all likelihood he is more rigid and strict, and less nurturing than Mrs. Calle. He appears to be a responsible individual who would provide for all his children, if allowed to do so.
That portion of the report is unrefuted by the record. The psychologist, nevertheless, concluded it would be detrimental to the children if primary residential responsibility were awarded the father since he intended to move them to Medellin to reside. It was the psychologist's view that the move would cut the children off from all they had known, especially their sisters and their mother's family. For this reason, the psychologist recommended that primary residential responsibility be awarded the father on the condition that he remain in the United States. Based on this testimony, the master awarded primary residential responsibility of Sabrina and Leonardo to their older sister and maternal grandmother, granting them leave to file a motion to intervene within twenty days. Over the father's exceptions, the trial court confirmed the master's findings and recommendation and entered the order under review.
The law recognizes that a natural parent has a paramount and preemptive right to enjoy and rear the minor children over all except the other natural parent, unless it is shown that such custody will be detrimental to the child's welfare. In re Guardianship of D.A. McW., 460 So.2d 368, 369-70 (Fla. 1984). Except in cases of clear, convincing and compelling reasons to the contrary, the child's welfare is presumed to be best served by care and custody in the natural family relation by its natural parents. In re Vermeulen, 114 So.2d 192, 196 (Fla. 1st DCA), cert. denied, 116 So.2d 775 (Fla. 1959). Speaking to the same issue, the United States Supreme Court stated: "It is plain beyond the need for multiple citation that a parent's desire for and the right to the `companionship, care, custody, and management of his or her children' is an important interest that `undeniably warrants deference and, absent a powerful countervailing interest, protection.'" Lassiter v. Department of Social Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649-50 (1981) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972)).
Here, the mother presented no evidence which in any way overcame the presumption that the welfare of the children would be best served in the care and custody of the natural father. The master's report, confirmed by the trial judge, found in part, that the father had "failed to prove that the welfare of the children would be promoted by his gaining their sole custody...." Thus, it appears that the general master and the trial judge applied the incorrect legal standard by failing to consider the paramount rights of the children's natural father, and thereby placed the burden upon the wrong party.
It is, of course, unsettling for young children to move from their usual surroundings, but that consideration alone has been held insufficient to dictate the issue of custody. See generally Mize v. Mize, 621 So.2d 417 (Fla. 1993). The children, are not strangers to their natural father who was with them during their earliest years and has maintained contact and a relationship with them since the parents divorced. We emphasize that the court-appointed psychologist, buttressed by the opinion of the father's expert concluded that he is a loving, fit, and capable parent. Thus, absent a showing of clear, convincing, and compelling reasons to the contrary, the father's superior rights mandate that the lower court's order be reversed and the father be awarded primary residential responsibility for the children. Webb v. Webb, 546 So.2d 1062, 1065 (Fla. 3d DCA), review denied, 553 So.2d 1168 (Fla. 1989).
We do note that the psychologist testified that the two children were stressed and were at risk of becoming depressed. However, *991 the psychologist felt that if the children had adequate support, including "frequent and liberal access to their sisters and contact, at least, with their mother, then possibly some of those things could mitigate circumstances... ." Further, the father agreed to provide for visitation and telephone contact to the United States. Thus, on remand, the order directing that the father be named the primary residential parent for the two younger children, should include the condition that the father comply with a liberal schedule of visitation and telephone communication to the family members residing in South Florida, as established by the trial court.
Finally, since the father has failed to demonstrate on this record he did not have notice and opportunity to be heard regarding the amount of fees he was ordered to pay for the services of the guardian ad litem, see generally, Applegate v. Barnett Bank, 377 So.2d 1150 (Fla. 1979), we affirm the order which determined $14,000 to be a reasonable fee, of which one-half was to be paid by the mother and one-half by the father.
For the foregoing reasons, the order denying the father primary residential responsibility for Sabrina and Leonardo, Jr. is reversed and remanded with directions to grant modification of the final judgment in accordance with the directions herein.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] We have not overlooked chapter 93-236, section 1, Laws of Florida, the legislature's 1993 amendment to section 61.13, Florida Statutes (1991), but rather find inapplicable this amendment to the child custody law which provides that where a child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child.