665 So.2d 1093 (1995)
Joan Leigh Gates MURPHY, Appellant,
v.
Naomi D. MARKHAM-CRAWFORD, Appellee.
No. 95-1546.
District Court of Appeal of Florida, First District.
December 28, 1995.
Rehearing Denied February 2, 1996.
Tracy O. Strom of Powell & Strom, P.A., Fort Walton Beach, for Appellant.
D. Michael Chesser of Chesser, Wingard, Barr, Whitney, Flowers & Fleet, P.A., Shalimar, for Appellee.
WEBSTER, Judge.
Appellant, the natural mother of a 12-year-old child, seeks review of a final order denying her request to modify a previously entered order by returning custody of the child to her from the child's paternal grandmother (appellee). Because we conclude that there is not clear and convincing evidence in the record that returning custody of the child to appellant will result in detriment to the child, we reverse.
The evidence establishes that appellant was sixteen and unmarried when she gave birth to the child. The child's natural father (appellee's son) died only months after the child had been born. For the first six years of the child's life, appellant was the custodian. When the child was six, appellant decided to join the Navy, so that she might obtain medical coverage for the child, and a steady source of support for herself and the child. At that time, the Navy required that those with minor children make other custody arrangements during training. Appellant asked appellee to assume custody of the child, and appellee agreed. A stipulated motion *1094 was filed, requesting the trial court to award custody to appellee. In due course, an order to that effect was entered. That order also reserved jurisdiction "to enter such further orders as may be equitable."
Upon completion of her training, appellant sought the return of the child. However, appellee told her that she would not voluntarily relinquish the child. Upon her discharge from the Navy, appellant continued her efforts to retrieve the child, and appellee remained unwilling voluntarily to relinquish the child. Appellant felt intimidated by appellee, and lacked the resources to engage in a legal battle for custody. Accordingly, the child remained with appellee, and appellant maintained regular contact with the child, and with appellee, whom appellant regularly asked to return the child. This went on for several years, and the relationship between appellant and appellee became increasingly strained.
In 1994, appellant married her present husband, a military officer, providing her with stability, financially and otherwise, which she had not previously had. Shortly thereafter, she filed a petition asking the trial court to return the child to her. After a relatively lengthy evidentiary hearing, the trial court found that the change in custody requested by appellant would be detrimental to the child. Accordingly, it denied appellant's petition. This appeal follows.
In In re Guardianship of D.A. McW., 429 So.2d 699 (Fla. 4th DCA 1983), approved, 460 So.2d 368 (Fla. 1984), the court said:
Given the fundamental interest of natural parents in the care, custody and management of their children, and the strong public policy which exists in this state in favor of the natural family unit, we believe that a natural parent of a child born out of wedlock should be denied custody only where it is demonstrated that the parent is disabled from exercising custody or that such custody will, in fact, be detrimental to the welfare of the child.... In our view, such a rule comports both with natural law and the strong public policy of this state which favors the establishment and continuity of family units.
Id. at 703-04 (citations omitted). Consistent with this language, subsequent decisions have held that, in a custody dispute between a natural parent and a third party (including grandparents), custody can be denied to the parent only when supported by clear and convincing evidence establishing that the parent has abandoned the child or is in some other meaningful sense an unfit parent, or that placing the child with the parent will be detrimental to the child's welfare. E.g., Calle v. Calle, 625 So.2d 988 (Fla. 3d DCA 1993); In re Marriage of Matzen, 600 So.2d 487 (Fla. 1st DCA 1992); Filter v. Bennett, 554 So.2d 1184 (Fla. 2d DCA 1989).
The trial court made no finding to suggest that appellant had either abandoned her child or was in some other sense an unfit parent; and the evidence would not support such a finding. Rather, the sole basis for the trial court's decision was that "it would be detrimental to [the child] to uproot her from the home she has come to know." However, the detriment which must be clearly and convincingly established before a natural parent's request for custody may be denied involves something much more serious than the discomfort normally experienced by a child when moved from a familiar environment into one engulfed by the fear and uncertainty associated with the unknown: "Detriment in this sense means more than the normal trauma caused to a child by uprooting him from familiar surroundings such as often occurs by reason of divorce, death of a parent or adoption. It contemplates a longer term adverse effect that transcends the normal adjustment period in such cases." Filter, 554 So.2d at 1185. Accord Marriage of Matzen, 600 So.2d at 490 ("`[d]etriment' refers to circumstances that produce or are likely to produce lasting mental, physical or emotional harm"); In the Interest of B.B., 559 So.2d 1277, 1278 (Fla. 2d DCA 1990) (same).
The only competent evidence of detriment to appellant's child should the two be reunited was that presented in the form of opinions, by a mental health counselor and a clinical psychologist. Both testified that the child would suffer from a return to appellant because she would lose the sense of stability *1095 associated with familiar surroundings (including home, school and friends). However, the mental health counselor believed that the child would be able to adjust to the changes; and the psychologist said that he did not have sufficient information to opine whether the child would adjust. We are unable to distinguish such evidence from that held to be legally insufficient in Calle and Filter. Accordingly, we hold that the evidence presented to the trial court was, likewise, legally insufficient to establish that returning the child to appellant would be detrimental to the child's welfare. Therefore, we reverse, and remand with directions that the trial court grant appellant's petition for return of the child.
By our decision, we do not intend to imply that the relationship between appellee and the child is unimportant. On the contrary, it is clear that appellee and the child have a close relationship, and that it will be in the child's best interest that the relationship continue. It is our hope that the parties will recognize that their dispute cannot but have an adverse impact on the child; and that, in recognition of that fact, they will attempt to deal amicably with each other in the future, for the sake of the child. It is our hope, further, that such improvement in the relationship between the parties will make unnecessary further resort to the courts. However, human nature being what it is, we recognize that, on remand, the trial court may be required to consider and rule upon a request by appellee for visitation with the child. We do not intend by this opinion to foreclose the trial court from doing so. See generally Beagle v. Beagle, 654 So.2d 1260 (Fla. 1st DCA) (discussing grandparent visitation rights), review granted, 663 So.2d 629 (Fla. 1995).
REVERSED and REMANDED, with directions.
ERVIN and BOOTH, JJ., concur.